**YUEN SANG LOW et al., Plaintiffs-Appellees,**

v.

The **ATTORNEY GENERAL OF the UNITED STATES,** and Cecil W. Fullilove, District Director, San Francisco District, Immigration and Naturalization Service, Defendants-Appellants.

No. 26741.

United States Court of Appeals, Ninth Circuit.

May 30, 1973.

David R. Urdan, Chief Asst. U. S. Atty. (argued), James L. Browning, Jr., U. S. Atty., Stephen M. Suffin, Trial Atty., I&NS, San Francisco, Cal., for defendants-appellants.

Joseph S. Hertogs (argued), of Jackson & Hertogs, San Francisco, Cal., for plaintiffs-appellees.

Before DUNIWAY and ELY, Circuit Judges, and BYRNE, Jr., District Judge.*

DUNIWAY, Circuit Judge:

## OPINION

■ The three appellees in this case are aliens who sought admission into the United States more than twenty years ago. They claimed to be citizens, but those claims were rejected, and each of them was ordered excluded by the Board of Immigration Appeals. While those proceedings were pending, each of them was paroled into the United States, pursuant to 8 U.S.C. § 1182(d)(5). For reasons which are not explained in the record, they have been in the United States on parole status ever since.

Each alien submitted an application for a suspension of deportation and adjustment of status to that of an alien lawfully admitted for permanent residence under section 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a)(1). The District Director of the Immigration and Naturalization Service refused to accept the applications on the ground that these aliens are not eligible for the relief afforded by that section. The aliens then sought review in the district court under 5 U.S.

C. § 701, et seq. The court granted their motion for summary judgment. It found that they had been "physically present" in the United States in excess of seven years, as required by section 244(a)(1), and that they were therefore entitled to file an application for suspension of deportation. We reverse.

Section 244(a) of the Act provides in pertinent part:

" . . . [T]he Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and—

(1) is deportable under any law of the United States . . . ; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application. . . . "

To bring themselves within this section, the aliens must satisfy two requirements: (1) They must have been "physically present in the United States" for the required period and, (2) they must be "deportable." In this case the aliens do not meet either requirement.

1. If the words "physically present" are to be taken literally, it is obvious that the aliens meet this requirement. However, we are in the never-never land of the Immigration and Nationality Act, where plain words do not always mean what they say.

In Leng May Ma v. Barber, 1958, 357 U.S. 185, 78 S.Ct. 1072, 2 L.Ed.2d 1246, the Court had before it the question whether an alien who, like the aliens in this case, was considered excludable but had been paroled into the United States, was "within" the United States under section 243(h) of the Act, 8 U.S.C. § 1253(h), and so entitled to seek withholding of deportation under that section. Surely, under the literal meaning of

* Honorable Wm. Matthew Byrne, Jr., United States District Judge, Central District of California, sitting by designation.

"within" the alien was "within" the United States. But the Court held that legally she was not.

The Court pointed to the long standing distinction "between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." (P. 187, 78 S.Ct. p. 1073.) It further said:

"In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry'. Shaughnessy v. United States ex rel. Mezei, 1953, 345 U.S. 206, 212, 73 S.Ct. 625, 629, 97 L.Ed. 956. See Kwong Hai Chew v. Colding, 1953, 344 U.S. 590, 596, 73 S.Ct. 472, 477, 97 L.Ed. 576. The distinction was carefully preserved in Title II of the Immigration and Nationality Act. Chapter 4 subjects those seeking admission to 'exclusion proceedings' to determine whether they 'shall be allowed to enter or shall be excluded and deported.' 66 Stat. 200, 8 U.S.C. § 1226(a). On the other hand, Chapter 5 concerns itself with aliens who have already entered the United States and are subject to 'expulsion,' as distinguished from 'exclusion,' if they fall within certain 'general classes of deportable aliens.' 66 Stat. 204, 8 U.S.C. § 1251. Proceedings for expulsion under Chapter 5 are commonly referred to as 'deportation proceedings.' Parenthetically, the word 'deportation' appears also in Chapter 4 to refer to the return of excluded aliens from the country, but its use there reflects none of the technical gloss accompanying its use as a word of art in Chapter 5."

The Court then cited (p. 188, 78 S.Ct. p. 1074) a list of cases holding that aliens held in custody pending determination of their admissibility have not made "an entry though the alien is physically within the United States." "It seems quite clear that an alien so confined would not be 'within the United States' for purposes of § 243(h)." (P. 188, 78 S.Ct. p.

1074.) The Court went on to hold that parole, as a substitute for custody, did not change the result; the parolee still was not "within" the United States. It relied in part on section 212(d)(5) of the Act, (8 U.S.C. § 1182(d)(5)), which states that parole "shall not be regarded as an admission of the alien," and that, after return to custody, the alien's case "shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."

*Leng May Ma* requires the same result here. Section 244, like section 243, is a part of Chapter 5, not Chapter 4. The use of different language in section 244 does not change the result. It is true that in *Leng May Ma* the court said that detained aliens are "physically within" the United States, and the aliens seek to distinguish the case on that ground. But the distinction will not wash.

Before the adoption of the Act in 1952, the statute provided that an alien who had "resided continuously in the United States for seven years or more" was eligible to apply for suspension of deportation. (Act of July 1, 1948, 62 Stat. 1206.) It is clear that if residence were still the criterion, the aliens could not meet it. In Kaplan v. Tod, 1925, 267 U.S. 228, 45 S.Ct. 257, 69 L.Ed. 585 (cited with approval in *Leng May Ma, supra,* 357 U.S. at p. 189, 78 S.Ct. at p. 1074), which involved a paroled alien, Mr. Justice Holmes said:

"The appellant could not lawfully have landed in the United States . . ., and until she legally landed 'could not have dwelt within the United States'. . . . When her prison bounds were enlarged by committing her to the custody of the Hebrew Society, the nature of her stay within the territory was not changed. She was still in theory at the boundary line and had gained no foothold in the United States." (P. 230, 45 S.Ct. p. 257.)

■ The seven years' residence language of the statute was criticized on the ground that an alien could enter the

United States and establish residence and then go abroad for an extended period while technically maintaining residence here and thus remain eligible for suspension of deportation. It was in response to that criticism that the Congress in 1952 modified the statute by including the "physically present . . . for a continuous period" requirement. See S. Rep.No.1515, 81st Cong.2d Sess., 595–604 (1950). Thus the purpose of Congress was to tighten the statute insofar as it applied to aliens who had "entered" the United States, not to extend the application of the statute to those who had been excluded but paroled into the United States pending final determination of their excludability. The decision in *Leng May Ma* is, we think, just as applicable to the "physically present in the United States" language of section 244 as it is to the "within the United States" language of section 243.

2. Assuming, however, that we are in error in this respect, *Leng May Ma* would nevertheless require a reversal in this case. This is because the aliens are not "deportable" within the meaning of section 244(a). This position at first blush seems as anomalous as our holding that these aliens are not technically physically present in the United States. The law, however, is that aliens paroled into the United States have not been admitted into the United States. See 8 U.S.C. § 1182 (d)(5). They are persons subject to "exclusion" which, as is pointed out in *Leng May Ma, supra*, 357 U.S. p. 187, 78 S.Ct. 1072, is to be distinguished from "expulsion" or "deportation." It is true that, as persons subject to exclusion, under Chapter 4 of Title II of the Act, 8 U.S.C. §§ 1221–1230, these aliens are subject to "immediate deportation." See 8 U.S.C. § 1227. Nevertheless, they are not "deportable under any law of the United States" within the meaning of section 244(a).

In *Leng May Ma, supra*, as we have seen, the Court held that one of the rights and privileges unavailable to excludees was application for withholding of deportation under section 243(h). The rationale is equally applicable to section 244(a). The Court held that the fact that Chapter 4 provides for the "deportation" of excludees does not render such excludees "deportable" as that term is used in Chapter 5. The Court found it significant that the provision for withholding of deportation, (§ 243(h)), was found in Chapter 5. So is the provision of section 244(a) in question here. Under the compulsion of *Leng May Ma, supra*, we hold that the appealing aliens are not deportable within the meaning of section 244(a). That term, as *Leng May Ma* holds, is a word of art and does not cover excludable aliens who have been paroled into the country.

We can find nothing in the law that would permit us to hold that section 244(a) becomes applicable if parole continues for an inordinate length of time. We are regretfully constrained to hold that suspension of deportation under section 244(a) is not a right or privilege extended to those paroled into the United States and who are therefore legally merely on the threshold of initial entry.

The judgment is reversed with directions to enter summary judgment in favor of the appellants.

ELY, Circuit Judge (dissenting):

I respectfully dissent. Whenever there is a reasonable doubt as to the proper interpretation of statutes granting discretionary power to the Attorney General in respect to the deportation of aliens, the doubt should be resolved in favor of the aliens. *See* Barber v. Gonzales, 347 U.S. 637, 74 S.Ct. 822, 98 L.Ed. 1009 (1954); Fong Haw Tan v. Phelan, 333 U.S. 6, 68 S.Ct. 374, 92 L.Ed. 433 (1948). *See also* Errico v. I&NS, 349 F.2d 541 (9th Cir. 1965), 385 U.S. 214, 87 S.Ct. 473, 17 L.Ed.2d 318 (1966); Garcia-Gonzales v. I&NS, 344 F.2d 804 (9th Cir. 1965).

My Brother Duniway's opinion is, typically, written with the utmost care; nevertheless, I cannot subscribe to the technicality of its reasoning. In grant-

ing relief to the aliens here involved, District Judge Zirpoli wrote, in part:

"The statute under which petitioners seek relief from the Immigration and Naturalization Service in this case is Section 1254(a) of Title 8, United States Code Annotated. Within the meaning of that section the petitioners, in the instant cases, have been *physically present* in the United States in excess of the prescribed number of years and are therefore entitled to seek the relief prayed for and are entitled to a hearing thereon from the Attorney General of the United States.

"The case of Leng May Ma v. Barber, 1958, 357 U.S. 185, 78 S.Ct. 1072, 2 L.Ed.2d 1246, applies to Section 1253 (h) of Title 8, United States Code, and is not, in this Court's view, controlling in its interpretation of Section 1254(a)." (emphasis in original)

Agreeing with Judge Zirpoli, I would affirm his "Order and Judgment" remanding the cause for the Attorney General's consideration of the appellees' applications for suspension of deportation.