**UNITED STATES of America, Plaintiff,**

v.

**Nicanor Almeida IRIBE, Defendant.**

**Crim. A. No. 91–CR–181.**

United States District Court,
D. Colorado.

Nov. 18, 1992.

Guy Till, Asst. U.S. Atty., Denver, Colo., for plaintiff.

Albert Cohen, Denver, Colo., for defendant.

## MEMORANDUM OPINION
## AND ORDER

MATSCH, District Judge

On June 4, 1991, Detective Dale Wallis of the Denver Police Department was conducting surveillance on a residence at 8371 W. 50th Avenue, # A. He observed the defendant, Nicanor Almeida Iribe, leave that location in a van which Detective Wallis followed for about 40 blocks to 52nd and Stuart Streets. Detective Wallis alerted other Denver police officers who arrested Mr. Iribe at that location. The arrest was made on a federal warrant for arrest pursuant to an indictment.

Detectives Frank Padilla and Bernie Montoya took Mr. Iribe into custody and gave him a Miranda warning in Spanish. Mr. Iribe does not speak or understand English. Detective Padilla suggested that they return to the residence at 8371 W. 50th Avenue. Mr. Iribe said that he did not live there; that it was the residence of his friend, Juanita Lopez. Despite the defendant's protestations, Detectives Padilla and Montoya took him to 8371 W. 50th Avenue, # A. The three of them were met at the door by Juanita Lopez, a young woman who had come from Mexico about a week earlier. She spoke only Spanish. De-

tective Padilla advised Ms. Lopez that Mr. Iribe was under arrest and asked permission to enter. Other officers arrived. Ms. Lopez let the police into the house and agreed to a search, signing a consent to search form, written in English, and explained to her in Spanish by Detective Padilla.

Nine police officers, including Jefferson County Sheriff's officers, searched in the house. In the course of the search, the officers found men's clothing in a back bedroom and Detective Padilla asked Ms. Lopez who lived there with her. She responded that her uncle, the defendant, also lived there.

At that point, Mr. Iribe admitted that he lived there and Detective Padilla asked Mr. Iribe, in Spanish, to sign the consent to search form and he did. The search of the house yielded $49,000 in currency and some weapons.

A padlocked garage was near the house but not attached to it. Special Agent Carlos Archuleta of the Immigration and Naturalization Service had accompanied the Denver police officers to be of assistance in the arrest and search. Agent Archuleta testified that he asked Mr. Iribe's permission to search the garage and Mr. Iribe gave it. Mr. Iribe testified that no one asked for his consent to search the garage and that he did not give it. He said that he thought that because he was under arrest he had to consent. On this conflict in the testimony, the court accepts the testimony of Mr. Archuleta that permission was given. However, that testimony did not include a specific statement that Mr. Iribe was told that he could refuse to consent to the search of the garage.

The police found several handguns, drug distribution paraphernalia and 13 kilograms of cocaine in the garage.

Mr. Iribe has moved to suppress the evidence obtained in the search of the house and the garage on the ground that his Fourth Amendment rights were violated. The government takes the position that Mr. Iribe has no Fourth Amendment protection because he is an excludable alien. To support that position, the government cites the language of Chief Justice Rehnquist in *United States v. Verdugo–Urquidez,* 494 U.S. 259, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990), *rehearing denied,* 494 U.S. 1092, 110 S.Ct. 1839, 108 L.Ed.2d 968 suggesting that excludable aliens are not "people" within the language of the Fourth Amendment. In that case, the Court held that United States agents were not limited by the Fourth Amendment in the search and seizure of property owned by a nonresident alien and located in a foreign country. The broad language of the Chief Justice was not required for the holding and was not joined by the majority of the justices.

■ This is not an extraterritorial application of the Fourth Amendment. Here, the question is whether only citizens of the United States have protection under the Fourth Amendment against unreasonable searches and seizures by local police officers. A negative answer is required by those cases, recognized by Chief Justice Rehnquist at pages 270–271 of the *Verdugo* opinion, holding that aliens enjoy this country's constitutional rights when they are here unless the Fourth Amendment is to be interpreted differently from the Equal Protection clause, the Fifth Amendment, the Sixth Amendment and the Fourteenth Amendment. This court rejects the notion that Denver police officers are not restrained from conducting unreasonable searches and seizures of the person and property of an alien in Colorado.

■ Mr. Iribe testified that when he agreed to the continuing search of his residence he was not aware that he had a right to refuse the officers' request. He said that he thought he had to agree since he was under arrest. He expressly denied consenting to the search of the garage. The prosecutor has the burden of proving that the permission to search was freely and voluntarily given. *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968). Since the garage was detached and padlocked, it is incumbent upon the government to show that it was the subject of a separate consent to search. *See United States v. Dunn,* 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326

(1987), *rehearing denied,* 481 U.S. 1024, 107 S.Ct. 1913, 95 L.Ed.2d 519 (1987).

Whatever Nicanor Iribe said to the officers about these searches and seizures, their validity depends upon evidentiary support for disbelieving his testimony and finding that Mr. Iribe gave his voluntary consent to both searches.

 There is no simple test to determine the voluntariness of a consent to search. *Schneckloth v. Bustamonte,* 412 U.S. 218, 224, 93 S.Ct. 2041, 2046, 36 L.Ed.2d 854 (1973). Different from the waiver of other constitutionally protected rights (*see e.g. Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)), it is not necessary to show full knowledge of the scope of the Fourth Amendment's protection or even the basic requirements for obtaining a warrant. *Schneckloth,* 412 U.S. at 234–46, 93 S.Ct. at 2051–58. Voluntariness is a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte,* at 248–49, 93 S.Ct. at 2058–59, and *United States v. Lindsey,* 877 F.2d 777, 783 (9th Cir.1989). Knowledge of the right to refuse permission to search is, of course, highly relevant to voluntariness. *United States v. Mendenhall,* 446 U.S. 544, 558–59, 100 S.Ct. 1870, 1879–80, 64 L.Ed.2d 497 (1980), *rehearing denied,* 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed.2d 1138. The defendant's being under arrest and in custody is also a factor in determining voluntariness. *United States v. Castillo,* 866 F.2d 1071, 1082 (9th Cir.1988). Finally, voluntariness of consent to search must be shown by a preponderance of the evidence. *United States v. Matlock,* 415 U.S. 164, 177, 94 S.Ct. 988, 996, 39 L.Ed.2d 242 (1974).

 In this case, the circumstances support a finding that Mr. Iribe did not voluntarily consent to the search of the house or the garage. The defendant was placed under arrest, taken out of his motor vehicle and physically restrained by handcuffs at least forty blocks from 8371 W. 50th Avenue. He was given *Miranda* warnings and did not waive his Fifth Amendment privi-

leges. When he was told that the police wanted to take him to the residence at 8371 W. 50th Avenue, he denied living there. He was taken into the house against his will and a full search of the house began by officers dispatched to the scene expressly for that purpose without anyone asking for his approval and in reliance on the permission granted by his niece—a young woman newly arrived from Mexico. She was not called as a witness at the hearing on the motion to suppress. There is nothing to show what her understanding was except a consent to search form, written in English, and the officers' testimony that she signed after the form was explained to her in Spanish because she could not communicate in English.

An important consideration in analyzing the officers' testimony concerning the consent of both Ms. Lopez and Mr. Iribe is whether the total situation shows vulnerability to coercion. In considering all the surrounding circumstances, to determine if a search was by consent or coerced, "account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents." *Schneckloth v. Bustamonte,* 412 U.S. at 229, 93 S.Ct. at 2049. One factor in judging vulnerability is the number of law enforcement officers present at the scene; here there were five initially, increasing to nine, as the search progressed. "[T]he presence of more than one officer increases the coerciveness of an encounter." *United States v. Ward,* 961 F.2d 1526 at 1533 (10th Cir.1992), citing *Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877. The subjects' national background and unfamiliarity with the law are also relevant. The Tenth Circuit held, in *United States v. Recalde,* 761 F.2d 1448, 1454 (10th Cir.1985), that a defendant's upbringing in Argentina, which instilled in him an acquiescence to police authority, is relevant in deciding whether a person would feel unable to terminate the encounter. Cited in *U.S. v. Ward* at 1533. Most recently, in *United States v. Bloom,* 975 F.2d 1447, 1457 n. 9 (10th Cir.1992), the Tenth Circuit has repeated that a person's subjective

characteristics are relevant to a determination of whether the defendant is more easily intimidated than other persons. Decisions involving consent searches always require "careful sifting of the unique facts and circumstances of each case," and the "consents" here are especially problematic. *Schneckloth*, 412 U.S. at 233, 93 S.Ct. at 2050–51.

 The defendant signed the consent form only after he knew that his clothing and personal effects had been found and that Juanita Lopez had told the police he lived there. His denial of residence there had been disproved. Currency and guns were found in the house before the question of searching the garage was raised. The garage was padlocked and Detective Wallis testified that when he was asked about a key, Mr. Iribe denied having it. The police did not present the defendant with a new consent to search form for the garage and made no notation of an additional consent on the form already signed by Mr. Iribe. The Denver police executed an indictment-based federal arrest warrant in a joint federal-state investigation. They were, therefore, obligated to comply with the requirement of Rule 5(a) and Rule 9(c)(1) of the Federal Rules of Criminal Procedure to take Mr. Iribe before the nearest federal magistrate "without unnecessary delay." They ignored that obligation because they wanted to take Mr. Iribe back to what they thought was his residence to conduct a search. They knew or should have known that they needed his consent for that search if he did live there. A warrantless search of property not immediately associated with the person, which is "remote in time or place from the arrest" cannot be justified, absent exigent circumstances. *Preston v. United States*, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1974), quoted in *United States v. Chadwick*, 433 U.S. 1, 15, 97 S.Ct. 2476, 2485, 53 L.Ed.2d 538 (1977). Nothing in the record shows that the police had sufficient evidence of Iribe's residence to permit them to prove probable cause for a warrant to search those premises.

 The failure to comply with the mandate of Rule 5(a) and Rule 9(c)(1) is, itself, a basis for invalidating any consent to search as it would the voluntariness of a confession when, as here, the very purpose of the delay was to take advantage of the arrested person's lack of knowledge of his rights. *Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), and *United States v. Torres*, 663 F.2d 1019, 1023 (10th Cir.1981), *cert. denied*, 456 U.S. 973, 102 S.Ct. 2237, 72 L.Ed.2d 847 (1982). Taken together with the other circumstances of this case, this court finds, as a matter of fact, that Nicanor Almeida Iribe did not voluntarily consent to the search of his residence at 8371 W. 50th Avenue, # A or the garage near it. Accordingly, it is

ORDERED that the motion to suppress all of the items seized during the search of the subject house and garage is granted.