Park THECK, aka Theck Park, aka Lee Jee Young, Petitioner,

v.

WARDEN, IMMIGRATION AND NATURALIZATION SERVICE, Respondents.

No. CV97–6206–JSL(RC).

United States District Court, C.D. California.

July 23, 1998.

Park Theck, Oakland, CA, Pro Per.

Lawrence E. Kole, Asst. U.S. Atty., Los Angeles, CA, for Respondents.

### ORDER RE: FEDERAL HABEAS CORPUS PETITION

LETTS, District Judge.

## I.

### BACKGROUND

#### A. Factual Background

Petitioner Park Theck, aka Theck Park, aka Lee Jee Young, attempted to enter the

United States at John F. Kennedy International Airport on November 19, 1994, using a fraudulent Canadian passport. Return, Exhs. 1–2 at 19–23. He was detained and charged with being an excludable alien under the Immigration and Naturalization Act ("INA"), Sections 212(a)(6)(C)(I),[1] 212(a)(7)(A)(I)(I),[2] and 212(a)(7)(B)(I)(I) and 212(a)(7)(B)(I)(II).[3] Petitioner was subsequently paroled into the United States, and an exclusion hearing was eventually set for October 16, 1995. Return, Exh. 4 at 25, Exh. 20 at 45.

On October 12, 1995, petitioner boarded a Korean Airlines flight to Korea; however, he was denied entry to the Republic of Korea because he did not have valid travel documents. Return, Exhs. 5, 10, 21 at 26, 33, 47. Petitioner arrived in San Francisco on October 13, 1995. Return, Exhs. 5, 9 at 26, 31. At that time, petitioner again was charged with being an excludable alien under Sections 212(a)(7)(A)(I)(I), 212(a)(7)(B)(I)(I) and 212(a)(7)(B)(I)(II) of the INA, and he was detained pending an exclusion hearing. Return, Exhs. 5–6 at 26–28.

On October 16, 1995, the exclusion hearing was held in New York on the original charges against petitioner, and he was or-dered excluded and deported from the United States.[4] Return, Exh. 8 at 30. Another exclusion hearing on the new charges was held in San Francisco on October 27, 1995, and petitioner was ordered to be excluded and deported to Korea. Return, Exh. 7 at 29. Petitioner appealed the latter order to the Board of Immigration Appeals ("BIA"), which dismissed his appeal on July 2, 1996.[5] Return, Exh. 20 at 45. Petitioner subsequently sought review in the United States District Court for the Northern District of California; however, the court dismissed the petition for lack of jurisdiction. *Theck v. INS*, 1997 WL 37565 (N.D.Cal.). The INS continues to detain petitioner, who has been in custody since October 13, 1995. Return, Exhs. 11–25 at 36–56.

### B. Procedural Background

On August 19, 1997, petitioner Park Theck filed the instant habeas corpus petition challenging his ongoing detention by the Immigration and Naturalization Service ("INS").[6] The plaintiff claims that INS has violated (1) international law, (2) the Constitution and (3) its own rules by detaining him for over six months after a final deportation order was entered.[7] Petition, at 4–5. Furthermore, petitioner claims that the INS has violated

---

1. Section 212(a)(6)(C)(I) provides that "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or entry into the United States or other benefit provided under this chapter is excludable." 8 U.S.C. § 1182(a)(6)(C)(I).

2. Section 212(a)(7)(A)(I) provides that "[e]xcept as otherwise specifically provided in this chapter, any immigrant at the time of application for admission—[¶] (I) who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General ... is excludable." 8 U.S.C. § 1182(a)(7)(A)(I)(I).

3. Section 212(a)(7)(B)(I) provides that "[a]ny nonimmigrant who—[¶] (I) is not in possession of a passport valid for a minimum of six months from the date of the expiration of the initial period of the alien's admission or contemplated initial period of stay authorizing the alien to return to the country from which the alien came or to proceed to and enter some other country during such period, or [¶] (II) is not in possession of a valid nonimmigrant visa or border crossing identification card at the time of application for admission, [¶] is excludable." 8 U.S.C. § 1182(a)(7)(B)(I).

4. Petitioner was detained in San Francisco and did not attend this hearing. Return, Exhs. 8, 21 at 30, 47.

5. There is no copy of this dismissal in the record before this court.

6. In the habeas corpus petition, petitioner states: "I'm [N]orth Korea[n] born and raised in China [. I am a] person who had refugee statu[s] in United Kingdom for nine years before [I] came to United States[.] I have no nationality at presently [sic]." Petition, at 5 ¶ b.

7. Apparently, petitioner has not been deported to South Korea because the South Korean authorities have determined he is not a South Korean citizen, Exhs. 11 and 13, and he has not been deported to China because the Chinese authorities have not responded to inquiries from respondent INS. *See* Exhs. 12–18, 23 and 24.

his civil rights by preventing him from marrying his girlfriend, Susana Gonzalez, a Spanish citizen, Petition, at 5, and his property rights by repeatedly searching his suitcase, which has now disappeared. Petition, at 5–6.

On November 4, 1997, respondent filed its answer, in which it argues that the court lacks jurisdiction over the petitioner's claims under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (the "Act"). Additionally, respondent asserts that petitioner, who is an excludable alien, is lawfully detained and there is no merit to his marriage and property claims. The petitioner filed a traverse on December 31, 1997.

On April 27, 1998, the parties were ordered to file briefs addressing whether this case is governed by *Hose v. Immigration & Naturalization Serv.,* 141 F.3d 932, (9th Cir. 1998). Respondent filed a memorandum of points and authorities on May 11, 1998; however, petitioner did not respond to the court's order.

## II.

### DISCUSSION

#### A. Jurisdiction

■ The respondent asserts that Section 242(g) of the INA[8] deprives this court of jurisdiction over petitioner's claims through habeas corpus review, as well as review of its decisions under mandamus and the Administrative Procedure Act. Although the Ninth Circuit concluded in *Hose* that the Act withdrew a district court's jurisdiction to entertain a habeas corpus petition challenging a final removal order, *Hose,* 141 F.3d at 934, petitioner, here, is not challenging the INS's removal order. Instead, he is challenging his

ongoing, and potentially indefinite, detention, claiming it is unconstitutional. Thus, petitioner's constitutional claims do not come within 8 U.S.C. § 1252(g), and the court has the jurisdiction to address them.

Even if some of petitioner's constitutional claims arise from a decision or action coming within 8 U.S.C. § 1252(g), the court still has jurisdiction to consider petitioner's constitutional claims. *See Ramallo v. Reno,* 114 F.3d 1210, 1214 (D.C.Cir.1997) (Under the Act, "habeas review remains available ... to raise substantial constitutional questions"), *petition for cert. filed,* 66 USLW 3264 (Sept. 24, 1997); *Yang v. Immigration & Naturalization Serv.,* 109 F.3d 1185, 1195–96 (7th Cir.) (holding the Act does not deprive federal courts of jurisdiction over constitutional claims), *cert. denied,* —— U.S. ——, 118 S.Ct. 624, 139 L.Ed.2d 605 (1997). Therefore, the court will address the merits of petitioner's constitutional claims.

#### B. Petitioner's Immigration Status

■ The immigration laws create two types of proceedings in which aliens can be denied the hospitality of the United States: deportation and exclusion hearings.[9] *Landon v. Plasencia,* 459 U.S. 21, 25, 103 S.Ct. 321, 325, 74 L.Ed.2d 21 (1982). Deportation refers to the removal from the country of aliens who already are physically in the United States, and exclusion refers to keeping undesirable aliens from entering the United States. *See* 8 U.S.C. §§ 1182, 1251; *Landon,* 459 U.S. at 25, 103 S.Ct. at 325; *Alvarez–Mendez v. Stock,* 941 F.2d 956, 961 n. 4 (9th Cir.1991), *cert. denied,* 506 U.S. 842, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992). Since petitioner was detained while seeking admission into the United States, he is considered an

---

8. Section 242(g) of the INA, 8 U.S.C. § 1252(g), was amended by the Act to provide, as follows:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any aliens under this chapter.

Pub.L. No. 104–208, § 306(a). The amendment to Section 1252(g) applies retroactively to cases

pending as of April 1, 1997, the effective date of the Act. *American–Arab Anti–Discrimination Comm. v. Reno,* 119 F.3d 1367, 1371–72 (9th Cir.1997), *petition for cert. filed,* —— U.S. ——, 118 S.Ct. 2059, 141 L.Ed.2d 137 (1998); Pub.L. No. 104–208, § 306(c)(1).

9. The Act "merged deportation and exclusion proceedings into a new and broader category entitled 'removal proceedings.' " *Kalaw v. Immigration & Naturalization Serv.,* 133 F.3d 1147, 1149 n. 2 (9th Cir.1997).

excludable alien. *See* 8 U.S.C. § 1182; *Landon*, 459 U.S. at 25, 103 S.Ct. at 325; *Alvarez–Mendez*, 941 F.2d at 961 n. 4.

█ Even though petitioner was paroled [10] into the United States pending his initial exclusion hearing, by virtue of the "entry fiction," he is still considered an excludable alien. *See* 8 U.S.C. § 1182(d)(5); *Alvarez–Mendez*, 941 F.2d at 961 n. 4; *Yuen Sang Low v. Attorney General*, 479 F.2d 820, 823 (9th Cir.), *cert. denied*, 414 U.S. 1039, 94 S.Ct. 539, 38 L.Ed.2d 330 (1973). The "entry fiction" provides that even if an excludable alien is physically present in the United States, legally he is considered to have been detained at the border and, therefore, has never effected entry into this country. *See Barrera–Echavarria v. Rison*, 44 F.3d 1441, 1450 (9th Cir.1995) (en banc), *cert. denied*, 516 U.S. 976, 116 S.Ct. 479, 133 L.Ed.2d 407 (1995).

█ The Attorney General possesses the statutory authority to detain such an alien for a prolonged period. *See Barrera–Echavarria v. Rison*, 44 F.3d at 1447–8. "[Over] a century ago, the [Supreme] Court recognized the validity of detaining excludable aliens pending deportation." *Id.* 44 F.3d at 1449. Detention, even when prolonged, is valid " 'as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens....' " *Id.* (*quoting Wong Wing v. United States*, 163 U.S. 228, 235, 16 S.Ct. 977, 980, 41 L.Ed. 140 (1896)). Excludable aliens, such as petitioner, have no right to be admitted into the United States, "even if the only alternative is prolonged detention." *Id.* 44 F.3d at 1450. However, because the justification for such prolonged detention presumes a lack of alternatives, when a viable alternative presents itself, continued detention may become unreasonable.

## C. Petitioner's Constitutional Rights

Petitioner claims, *inter alia*, that the INS has violated his constitutional rights by re-

fusing to allow him to marry his girlfriend Susana Gonzalez, a Spanish citizen. Petitioner also claims that, by violating his constitutional right to marry, the INS also has violated his Fourth Amendment right to be free from unreasonable seizures. Here, it appears that petitioner's current detention is justified only because the INS has yet to find another country who will take him. Petitioner argues that if he is allowed to marry Ms. Gonzalez, as is his constitutional right, he would be deportable to Spain. Petitioner's continuing detention becomes an unreasonable seizure, therefore, when he is unconstitutionally denied the ability to change his status in such a way that would free him from detention.

█ It is undisputed that the petitioner is an excludable alien who, by virtue of the "entry fiction," is not considered to have been admitted into the United States. This legal fiction, however, generally is applied only in connection with immigration and deportation proceedings and "does not limit the right of excludable aliens detained within United States territory to humane treatment." *Lynch v. Cannatella*, 810 F.2d 1363, 1373 (5th Cir.1987). Although it is "clear that excludable aliens have no procedural due process rights in the admission process, the law is not settled with regard to nonprocedural rights." *Barrera–Echavarria v. Rison*, 44 F.3d 1441, 1449 (9th Cir.1995) (en banc), *cert. denied*, 516 U.S. 976, 116 S.Ct. 479, 133 L.Ed.2d 407 (1995). The courts have recognized that excludable aliens are entitled to some constitutional protections. *See Plyler v. Doe*, 457 U.S. 202, 211–12, 102 S.Ct. 2382, 2391–92, 72 L.Ed.2d 786 (1982) (the Fifth, Sixth, and Fourteenth Amendments apply to all persons within the United States, including excludable aliens); *Wong Wing v. United States*, 163 U.S. 228, 238, 16 S.Ct. 977, 41 L.Ed. 140 (1896) (Fifth, Sixth and Fourteenth Amendments apply to all within the

---

10. When an alien is paroled into the country, he is allowed to physically enter the country pending a later hearing to determine whether he will be admitted. 8 U.S.C. § 1182(d)(5)(A); *Sharma v. Reno*, 902 F.Supp. 1130, 1134 n. 2 (N.D.Cal. 1995). Section 602(a) of the Act modified 8 U.S.C. § 1182(d)(5)(A) to provide the Attorney General with discretion to temporarily parole into this country "for urgent humanitarian reasons or significant public benefit or for reasons deemed strictly in the public interest any alien applying for admission to the United States...." 8 U.S.C. § 1182(d)(5)(A).

boundaries of a state, including aliens); *Lynch v. Cannatella,* 810 F.2d 1363, 1370 (5th Cir.1987) (excludable aliens are entitled to certain Fifth and Fourteenth Amendment protections); *Jean v. Nelson,* 727 F.2d 957, 972 (11th Cir.1984) (en banc) (although excludable aliens cannot challenge either admission or parole decisions under a claim of constitutional right, certain substantive constitutional rights may exist and have been recognized in other contexts); *United States v. Henry,* 604 F.2d 908, 914 (5th Cir.1979) (excludable aliens entitled to Fifth Amendment protections). As a general matter, persons within the jurisdiction of the United States should be considered to be protected by the Constitution, unless it has been expressly held otherwise. Here, petitioner is not challenging either admission or parole decisions, but rather is asserting his fundamental right to marry and his right to be free from unreasonable seizures. Given the lack of case law holding otherwise, the court finds that plaintiff does enjoy these constitutional rights.

### 1. Petitioner's Right to Marry

 Petitioner alleges that the INS has refused to allow him to marry, in violation of his constitutional rights. The right to marry is a fundamental right, *Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978); *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), which is also enjoyed by persons incarcerated in penal institutions. *See Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). In *Turner,* the Supreme Court, applying a reasonable relation standard, held that an almost complete ban on marriage was not reasonably related to legitimate penological objectives and served as an exaggerated response to claimed security objectives. *Turner,* 482 U.S. at 97–98, 107 S.Ct. at 2266. Though the prison could order substantial restrictions, such as time, circumstances, and perhaps, prior approval of the warden, it could not prohibit prisoners from forming a constitutionally protected relationship. *Turner,* 482 U.S. at 99, 107 S.Ct. at 2267.

The INS has offered no legitimate penological reason why petitioner should not be allowed to exercise his constitutional right to marry. Absent such a showing, the INS cannot refuse to allow petitioner to marry.

### 2. Petitioner's Right to Be Free From Unreasonable Seizures

 Petitioner has been in custody intermittently since he attempted to enter this country on November 19, 1994 and continuously since October 13, 1995, when he returned from South Korea after being refused entry there. The INS has attempted to obtain permission to deport petitioner either to China or South Korea, but neither of these countries, nor presumably any other country, will admit him. Petitioner, therefore, remains in custody and could end up serving what amounts to a life term if he is never determined to be deportable to another country.

Petitioner's continuing incarceration is justified only because he is not admissible to the United States *and* because there is nowhere else to send him.[11] It is only when there is a lack of other alternatives that such incarceration could be reasonable. If, however, the petitioner was deportable, the INS would have to deport him, absent some other overriding interest.

Petitioner alleges that if he is permitted to marry Ms. Gonzalez, a Spanish citizen, he will be deportable to Spain and the INS would have no continuing right to detain him. If these allegations are true, when petitioner is denied the right to marry, he is also denied the ability to be freed from his present detention. Denying petitioner the right to marry, in these circumstances, results in an unreasonable seizure under the Fourth Amendment.

The courts generally have assumed, without explicitly holding, that illegal aliens possess Fourth Amendment rights. *See United States v. Verdugo–Urquidez,* 494 U.S. 259, 282 n. 6, 110 S.Ct. 1056, 1070, 108 L.Ed.2d 222 (1990) (Brennan, J., dissenting) (citing *United States v. Rodriguez,* 532 F.2d 834, 838 (1976)); *Benitez–Mendez v. INS,* 760

---

**11.** The INS has offered no other justification for keeping petitioner in custody.

F.2d 907 (1983); *Yam Sang Kwai v. INS,* 411 F.2d 683, 133 U.S.App.D.C. 369, 372, *cert. denied,* 396 U.S. 877, 90 S.Ct. 148, 24 L.Ed.2d 135 (1969). The court in *Au Yi Lau v. U.S. INS,* 445 F.2d 217, 144 U.S.App.D.C. 147, 153, *cert. denied,* 404 U.S. 864, 92 S.Ct. 64, 30 L.Ed.2d 108 (1971), stated that "aliens in this country are sheltered by the Fourth Amendment in common with citizens." In *INS v. Lopez–Mendoza,* 468 U.S. 1032, 1047, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), a majority assumed that all persons in the United States, including illegal aliens, have Fourth Amendment rights.

In *United States v. Verdugo–Urquidez,* 494 U.S. 259, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990), *rehearing denied,* 494 U.S. 1092, 110 S.Ct. 1839, 108 L.Ed.2d 968, the Supreme Court held that the Fourth Amendment did not apply to a search by United States agents in Mexico of a Mexican citizen's property. The holding in *Verdugo* is limited to extraterritorial searches and seizures. *See Verdugo,* 494 U.S. at 278–79, 110 S.Ct. at 1067–68 (Kennedy, J., concurring) ("[i]f the search had occurred in a residence within the United States, I have little doubt that the full protections of the Fourth Amendment would apply."); *Barrera–Echavarria,* 44 F.3d at 1450 (citing *Verdugo* for the proposition that "Fourth Amendment not applicable to search in Mexico of Mexican citizen's home"); *United States v. Davis,* 905 F.2d 245, 251 (9th Cir.1990), *cert. denied,* 498 U.S. 1047, 111 S.Ct. 753, 112 L.Ed.2d 773 ("*Verdugo–Urquidez* only held that the fourth amendment does not apply to searches and seizures of nonresident aliens in foreign countries...."); *United States v. Iribe,* 806 F.Supp. 917 (D.Colo.1992), *aff'd in part and reversed in part,* 11 F.3d 1553 (10th Cir.1993) (language in *Verdugo* "suggesting that excludable aliens are not 'people' within the language of the Fourth Amendment ... was not required for the holding and was not joined by the majority of the justices"). *Verdugo* does not apply here, where the extraterritorial application of the Fourth Amendment is not at issue.

If the court does not grant relief to petitioner, he faces what could amount to a life prison sentence. Although such detention of an excludable alien has been held to be reasonable when there are no other alternatives, it becomes unreasonable when, as here, there is another alternative. If, as petitioner alleges, marriage to Ms. Gonzalez would enable him to be deported to Spain and, therefore, to be freed from detention, then the refusal to allow petitioner to marry results in an unreasonable seizure under the Fourth Amendment.

Even if petitioner did not have a constitutional right to marry, the INS's refusal to allow petitioner to marry, in this context, would still give rise to a Fourth Amendment violation. Petitioner's incarceration is based solely upon his status as an excludable alien who has no country to which to be deported. Absent a legitimate penological interest to the contrary, the petitioner has a right to make himself deportable, in order to prevent him from being incarcerated indefinitely. *A fortiori,* petitioner must be allowed to exercise his *constitutional* right to marry.

### III.

### CONCLUSION

Having reviewed the papers filed in connection with this matter and being fully apprised of the relevant facts and law,

IT IS HEREBY ORDERED that petitioner's request to marry be GRANTED.

IT IS SO ORDERED.