**Ravinder Kumar SHARMA, Petitioner,**

v.

**Janet RENO, United States Attorney General, and Thomas Schiltgen, District Director, Immigration and Naturalization Service, Respondents.**

**No. C 95–2175 SBA.**

United States District Court,
N.D. California.

Sept. 29, 1995.

Merle D. Kahn, Angela M. Bean & Associates, San Francisco, CA, for Plaintiff.

Michael J. Yamaguchi, United States Attorney, Mary Beth Uitti, Chief, Civil Division, Assistant United States Attorney, Patricia A. Duggan, Special Assistant United States Attorney, San Francisco, CA, for Defendants.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

ARMSTRONG, District Judge.

Ravinder Kumar Sharma ("petitioner"), a citizen of the United Kingdom, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and sections 106(a)(10) and 106(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1105a(a)(10), 1105a(b). Petitioner seeks review of a determination by the Immigration and Naturalization Service District Director ("Director") that he is ineligible for adjustment of status under 8 U.S.C. § 1255(a), INA § 245(a), and of a decision of the Board of Immigration Appeals ("BIA") denying (1) petitioner's request to renew his application for adjustment in his exclusion hearing, and (2) petitioner's request to voluntarily withdraw his application for admission to the United States. After having read and considered the papers submitted by each party the Court finds that neither the Director nor the BIA erred by finding that the petitioner was ineligible for adjustment of status or by refusing his request for voluntary withdrawal of his application.[1]

## BACKGROUND

Petitioner, a citizen of the United Kingdom, first entered the United States in July, 1984, as a B–1 visitor for business. He obtained a job with Interactive Transportation Systems ("ITS"), and the Immigration and Naturalization Service ("INS") granted him a change of status to H–1 non-immigrant temporary worker, valid until January 10, 1987, permitting him to work for ITS. However, in February 1985, petitioner left ITS and purchased his current business, Marble

---

1. Petitioner also brought an application for a temporary restraining order and preliminary injunction prohibiting petitioner's deportation while this claim is pending. The parties later resolved the issue among themselves. On July 10, 1995, the parties filed a stipulation that respondent would not enforce petitioner's order of deportation until after September 30, 1995. Injunctive relief is thus not required, and this Court will address the merits of petitioner's habeas corpus petition. Pursuant to Local Rule 7–1(b), this Court adjudicates this matter without oral argument.

Palace, which manufactures and installs bathroom fixtures. Marble Palace currently employs petitioner, his wife, and twelve workers.

Petitioner never informed the INS that he had left the employ of ITS. In 1986 the INS became aware that petitioner was no longer working for ITS and instituted deportation proceedings. Petitioner was granted voluntary departure in lieu of deportation, and left the United States in 1987.

After twice being denied a visa to reenter the United States, petitioner entered illegally and continued to operate Marble Palace. In 1988 petitioner left for the United Kingdom to divorce his wife. He then flew to Canada and married his current wife Christine George, a United States citizen. Petitioner attempted to enter the United States posing as a United States citizen, but his British passport was discovered and he was refused entry. He later entered the United States without inspection and resumed operation of his business with his new wife.

In 1990 the INS again initiated deportation proceedings against petitioner for entry without inspection. Petitioner again requested and obtained permission to voluntarily depart the country. Petitioner applied for a visa in England, but was determined to be excludable because he had falsely represented himself as a United States citizen in 1988. His application for a waiver of excludability, based on his marriage to a U.S. citizen, was also denied. In May 1991 petitioner reentered the United States without inspection. In 1992 petitioner paid more than $13,000 to obtain a false alien registration card.

The events leading to the exclusion proceedings which underlie this petition began on September 10, 1993. While returning from a business trip to China, petitioner attempted to enter the United States at San Francisco, California, by presenting his counterfeit alien registration card. Petitioner was paroled into the United States for delayed inspection.[2]

On September 14, 1993, petitioner's parole was revoked and petitioner was placed in exclusion hearings. While those proceedings were pending, petitioner applied to the Director in San Francisco for an adjustment of his immigration status, due to his marriage to a U.S. citizen. On March 15, 1994, the Director denied petitioner's application, finding that petitioner was excludable due to his use of a counterfeit registration card, 8 U.S.C. § 1182(a)(6)(C)(i), INA § 212(a)(6)(C)(i) (misrepresentation), and that petitioner had not applied for a waiver of excludability. (Administrative Record III ("AR–III") at 77.)

The next day petitioner appeared before an Immigration Judge ("IJ") in an exclusion hearing. Petitioner admitted the factual charges against him, but requested that the IJ renew his application for adjustment. The IJ refused to do so, basing his decision on 8 C.F.R. § 245.2(a)(1) which only allows a renewal of adjustment applications in exclusion hearings under limited circumstances. Petitioner also requested that he be allowed to withdraw his application for admission and voluntarily depart the country. This request was also denied and petitioner was ordered excluded and deported from the United States. (AR–III at 37–42.) On September 13, 1994, the BIA affirmed the IJ's decision. (AR–III at 1–5.)

The parties are currently before the court on petitioner's Petition for a Writ of Habeas Corpus pursuant to 8 U.S.C. §§ 1105a(a)(10) and 1105a(b), INA §§ 106(a)(10) and 106(b). He seeks review of the Director's denial of adjustment, and of the decision of the Board of Immigration Appeals.

Petitioner argues that the Director abused his discretion by denying petitioner's application for adjustment due to petitioner's excludability without allowing petitioner to apply for a waiver of excludability. Petitioner argues that the BIA erred by not finding the limitations on renewal of an application for adjustment at exclusion hearing invalid. Petitioner further argues that the BIA abused its discretion by not permitting petitioner to withdraw his petition and voluntarily depart the United States.

**2.** When an alien is "paroled" into the country, he is allowed to physically enter the country pending a later hearing to determine whether he will be admitted. 8 U.S.C. § 1182(d)(5)(A).

## DISCUSSION

### A. *JURISDICTION OF THE COURT*

■ This Court has jurisdiction to entertain habeas corpus petitions of excludable aliens. 8 U.S.C. § 1105a(b).[3] "For a habeas corpus proceeding the alien must be detained or at the least be in technical custody." *Brownell v. Tom We Shung,* 352 U.S. 180, 183, 77 S.Ct. 252, 255, 1 L.Ed.2d 225 (1956).

■ Petitioner is not currently being detained by the United States government. He is, however, currently under a deportation order and has exhausted his administrative remedies. The Ninth Circuit has held that where administrative remedies have been exhausted and an alien is subject to immediate deportation, there is "sufficient immediacy of action and interference with freedom to support habeas corpus jurisdiction," even if the petitioner is not in actual INS custody. *Flores v. INS,* 524 F.2d 627, 629 (9th Cir. 1975). Thus, petitioner is in "technical custody" for the purpose of a habeas corpus action, and this Court has jurisdiction to adjudicate his petition.

### B. *THE DISTINCTION BETWEEN DEPORTABLE ALIENS AND EXCLUDABLE ALIENS*

■ The United States immigration laws have long distinguished between *deportable* aliens and *excludable* aliens. *See Leng May Ma v. Barber,* 357 U.S. 185, 187, 78 S.Ct. 1072, 1073, 2 L.Ed.2d 1246 (1958). A *deportable* alien is one who has *entered* the country;[4] an *excludable* alien is one who *seeks to enter* the country. *See Ramirez–Durazo v. INS,* 794 F.2d 491, 495 (9th Cir. 1986).

■ Aliens who have entered the country "irrespective of legality" have "additional rights and privileges" not granted to aliens who are on the threshold of entry. *Leng May Ma,* 357 U.S. at 187, 78 S.Ct. at 1073. In contrast, aliens "who may not appear to the examining immigration officer at the port of arrival to be clearly and beyond a doubt entitled to land shall be detained for further inquiry...." 8 U.S.C. § 1225(b).[5] Under a procedure known as "parole," an alien may be allowed into the country temporarily, until an exclusion hearing can be held. "[S]uch parole of [an] alien shall not be regarded as an admission of the alien ..." 8 U.S.C. § 1182(d)(5)(A).

■ Since there has been no official entry, an excludable alien does not "acquir[e] the procedural protections afforded a deportable alien." *Gallego v. INS,* 674 F.Supp. 280, 286 n. 9 (W.D.Wis.1987). "[A]n alien who has been paroled into the United States is treated the same as one who has only just arrived." *Alvarez–Mendez v. Stock,* 941 F.2d 956, 963 (9th Cir.1991) (aliens have no right to a hearing before their parole is revoked).

Petitioner was paroled into the United States. He is thus an excludable alien who is not deemed to have entered the country despite his physical presence.

### C. *THE DISTRICT DIRECTOR'S DENIAL OF PETITIONER'S APPLICATION FOR ADJUSTMENT WAS NOT IMPROPER*

On March 15, 1994, Acting INS District Director for San Francisco Philip Waters denied petitioner's application for adjustment of status to permanent resident. The Director found that due to the petitioner's purchase and use of a counterfeit Alien Registration Card, the applicant was "inadmissible on the grounds of misrepresentation, as pro-

---

**3.** That statute provides:

Notwithstanding the provisions of any other law, any alien against whom a final order of exclusion has been made heretofore or hereafter under the provisions of section 1226 of this title or comparable provisions of any prior Act may obtain judicial review of such order by habeas corpus proceedings and not otherwise.

**4.** An entry involves "(1) a crossing into the territorial limits of the United States, i.e., physical presence; plus (2)(a) an inspection and admis-

sion by an immigration officer or (b) actual and intentional evasion of inspection at the nearest inspection point; and (3) freedom from official restraint." *Correa v. Thornburgh,* 901 F.2d 1166, 1171 (2d Cir.1990).

**5.** "[T]he detention of an alien in custody pending determination of his admissibility does not legally constitute an entry though the alien is physically in the United States." *Leng May Ma,* 357 U.S. at 188, 78 S.Ct. at 1074.

vided within the exclusion provisions of Section 212(a)(6)(C)(i) of the INA." (AR–III at 75). Although the INA allows for the consideration of a waiver of excludability, § 212(i), the Director found that, while petitioner had filed an application for a waiver in 1992 which was denied, no waiver had been filed in the present case. The application for adjustment of status was thus denied for statutory ineligibility.[6]

### 1. LEGAL STANDARD

■■■ The Ninth Circuit has held that where the INS determines that an alien is *statutorily ineligible* for adjustment of status, that finding is reviewed under the substantial evidence test, not the abuse of discretion standard. *Lee v. INS*, 541 F.2d 1383, 1385 (9th Cir.1976); *accord Manzo–Fontes v. INS*, 53 F.3d 280 (9th Cir.1995) (adopting substantial evidence test in registry proceedings, and citing *Lee* ). Under that standard, this Court may overrule such a determination "where a finding required by the statute is unsupported by reasonable, substantial or probative evidence." *Id.* (quoting *Kasravi v. INS*, 400 F.2d 675, 677 n. 3 (9th Cir.1968)).

### 2. APPLICATION OF THE SUBSTANTIAL EVIDENCE STANDARD

■■■ In denying petitioner's application for adjustment of status, the Director made two findings: (1) that petitioner was statutorily excludable on the grounds of misrepresentation under 8 U.S.C. § 1182(a)(6)(C)(i) and (2) that petitioner was not entitled to receive a waiver of excludability under 8 U.S.C. § 1182(i) because petitioner did not file a Form I–601, Application for Waiver of Grounds of Excludability, in conjunction with his application for adjustment of status.

(a) *Petitioner is statutorily excludable*

Section 212(a)(6)(C)(i) of the INA, 8 U.S.C. § 1182(a)(6)(C)(i) provides that:

Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has

procured) a visa, other documentation, or entry into the United States ... is excludable.

The Director found that petitioner is such an alien, in that petitioner admits to purchasing and attempting to use an Alien Registration Card that "was not genuine." (AR III at 76.)

Since it is undisputed that petitioner bought and attempted to use a counterfeit Alien Registration Card, the Court finds that the Director's determination that the petitioner is excludable is supported by substantial evidence.

(b) *Petitioner was not entitled to a waiver of excludability because he did not apply for one*

■■■ The Director found that since petitioner had not filed an application for a waiver in conjunction with his application for adjustment, he was not eligible for one. INA § 212(i), 8 U.S.C. § 1182(i), provides that the Attorney General may, in his discretion, waive exclusion for misrepresentation "in the case of an immigrant who is the spouse ... of a United States citizen." However, 8 C.F.R. § 212.7(a)(1)(ii) requires that

[a]n applicant for adjustment of status who is excludable and seeks a waiver under section 212(h) or (i) of the Act *shall* file an application on Form I–601 with the director or immigration judge considering the application for adjustment of status.

(emphasis added). The Director specifically found that no form I–601 had been filed with his office as of the date of the hearing.

As petitioner points out, he did file a Form I–601 request in England in 1992 in connection with an earlier attempt to become a permanent resident alien. Petitioner also informed the Director of the existence of the Form I–601 he had filed two years earlier. However, that earlier request was denied, and unsuccessfully appealed. Petitioner admits that he did not file any Form I–601 with the Director in San Francisco. The Court thus finds that the Director's finding, that

---

**6.** Respondents argue that petitioner is *also* statutorily ineligible for adjustment of status because his parole was revoked. Thus, respondents argue, he is no longer "paroled" into the country.

The Court does not reach this issue because it was not a basis for the Director's decision to deny petitioner's application. (AR–III at 74–77.)

petitioner was not entitled to a waiver of excludability because he did not file a Form I–601 to request one, is supported by substantial evidence, and is therefore not grounds for reversal of the Director's decision.[7]

### D. THE BIA PROPERLY HELD THAT THE IMMIGRATION JUDGE DID NOT HAVE THE AUTHORITY TO RENEW AN APPLICATION FOR ADJUSTMENT OF STATUS IN AN EXCLUSION HEARING

After the Director denied petitioner's application for adjustment of status, petitioner attempted to renew his application for adjustment of status in his exclusion hearing. However, he was informed by the IJ that, in an *exclusion hearing*, 8 C.F.R. § 245.2(a)(5)(ii) provides that an application may only be renewed if the application was filed after the alien was properly inspected and admitted to the United States, AND the alien filed the application for adjustment and then left the United States and returned under the terms of an Advance Parole Authorization,[8] neither of which condition applies to petitioner. (AR–III at 39.)

Petitioner appealed, arguing that this regulation impermissibly conflicts with the INA provision for adjustment of status and that the regulation denied petitioner equal protection of the laws under the Fifth Amendment. The BIA upheld the IJ's decision and refused to adjudicate the constitutional issues. (AR–III at 3.) This Court is thus the first court to consider the constitutional issues.

### 1. REGULATION IS NOT INCONSISTENT WITH STATUTE

Petitioner's first claim with respect to 8 C.F.R. § 245.2(a)(5)(ii) is that the regulation is inconsistent with 8 U.S.C. § 1255, INA § 245 (providing for adjustment of status) and that it is therefore invalid.

### a. STANDARD

Since the Supreme Court's decision in *Chevron, USA, Inc. v. Natural Resources Defense Council Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Ninth Circuit has held that agency regulations are reviewable under the *Chevron* "arbitrary and capricious" standard. *Tovar v. US Postal Service,* 3 F.3d 1271, 1276 (9th Cir.1993). In *Tovar* the Ninth Circuit articulated the steps which a court must take in applying that standard. First, the court must consider whether Congress has "clearly expressed" its opinion on an issue of interpretation. If not, then the only question before the reviewing court is whether "the agency's answer is based on a permissible construction of the statute." *Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2782.

 "In determining whether an agency's construction is permissible, the court considers whether Congress has explicitly instructed the agency to flesh out specific provisions of the general legislation, or has impliedly left to the agency the task of developing standards to carry out the general policy of the statute." *Tovar,* 3 F.3d at 1276. If Congress has expressly authorized rulemaking, then "the reviewing court must find the agency's construction permissible unless it is arbitrary, capricious, or manifestly contrary to the statute." *Tovar,* 3 F.3d at 1276. Even if Congress has not specifically authorized the agency to make rules, the reviewing court must still uphold the agency's construction of the statute, as expressed by the regulations, if it is reasonable. *Id.*

### b. APPLICATION

Section 245 of the INA, 8 U.S.C. § 1255 provides that

---

7. Petitioner argues that the Director should have allowed petitioner to apply for a waiver *after* the Director had determined that he was ineligible and noted that no waiver had been filed. Petitioner cites no authority in support of this contention. Further, the Court notes that petitioner was represented by counsel when he filed his application with the Director.

8. 8 C.F.R. § 212.5(f) allows the INS to grant "advance parole" to an alien before he attempts to enter the United States. "INS also utilizes advance parole to permit aliens to leave the country and to reenter lawfully without jeopardizing pending applications for discretionary relief." *Navarro–Aispura v. INS,* 53 F.3d 233, 235 (9th Cir.1995).

[t]he status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence . . .

Since Section 245 expressly authorizes the Attorney General to prescribe regulations controlling applications for adjustment, this Court must uphold the regulation "unless it is arbitrary, capricious, or manifestly contrary to the statute." *See Tovar,* 3 F.3d at 1276.

8 C.F.R. § 245.2(a)(5)(ii) limits the opportunity to *renew* an application for adjustment in exclusion hearings. The regulation states, *inter alia,* that "[n]o appeal lies from the denial of an application by the director, but the applicant retains the right to renew his or her application in proceedings under Part 242 of this chapter [deportation proceedings], or under Part 236 [exclusion proceedings] if the applicant is a parolee and meets the two conditions outlined in § 245.2(a)(1)." Section 245.2(a)(1) provides in relevant part that:

First, the denied application must have been properly filed subsequent to the applicant's earlier inspection and admission to the United States; second, the applicant's later absence from and return to the United States must have been under the terms of an advance parole authorization on Form I–512 granted to permit the applicant's absence and return to pursue the previously filed adjustment application.

■ Petitioner argues that 8 C.F.R. § 245.2(a)(5)(ii) is manifestly contrary to the statute. He argues that the statute provides the remedy of adjustment of status to *any* alien who was paroled into the United States,

and that by only allowing aliens with *advance* parole to renew an application for adjustment in exclusion hearings, the regulation restricts a remedy which Congress intended to provide.[9] (Pet'r Mem.Supp.Pet. at 14).

The word "any" does not appear in INA § 245, and petitioner has cited no precedent for the proposition that the statute was intended to provide an opportunity to apply for adjustment of status to *all* paroled aliens. Further, the issue here is the *renewal* of an application previously filed, examined, and denied. Even assuming *arguendo* that Congress intended all paroled aliens to have an opportunity to file an application for adjustment, petitioner has made no showing that Congress intended to make the remedy of filing a *renewal* of that application available in all possible fora. Nor has petitioner shown that the limits on renewal of an application at exclusion hearings are arbitrary or capricious.[10]

■ However, this Court's role is to review the regulation in light of the statute, not to compare rival interpretations of that statute. *See Rendleman v. Shalala,* 21 F.3d 957 (9th Cir.1994) (regulations which establish a "guided approach" to scholarship repayment waivers are not contrary to statute which provides waivers "whenever" compliance is an undue burden). The regulations which petitioner is challenging do not limit the availability of an application for adjustment. The regulations provide that "[a]n alien who believes he meets the eligibility requirements of section 245 of the Act . . . shall apply to the director having jurisdiction over his place of residence." 8 C.F.R. § 245.2(a)(1). In accordance with this regulation, petitioner filed an application for adjustment with the Director in San Francisco, California. That application was evaluated and denied. Peti-

---

**9.** Preliminarily, the Court notes that petitioner appears to equate the right to *apply* for an adjustment of status with the right to *renew* such an application which has been considered and denied. The statute does not expressly address renewals of applications for adjustment which have been denied. However, the authority which Congress invested in the Attorney General pursuant to § 245 is certainly sufficient to embrace regulations governing the appeal and/or renewal of an application which has been denied.

**10.** Petitioner argues that there is no rational basis for treating aliens who were granted advance parole before they left the United States differently from aliens who were granted parole at the border. (Pet'r Mem.Supp.Pet. at 17.) This Court finds that it is *not arbitrary* to allow advanced paroled aliens to renew a petition for adjustment at an exclusion hearing, while denying the privilege to other paroled aliens, since the former left the country and returned with the *permission* of the INS.

tioner has thus had an opportunity to apply for adjustment of status, and he did so. He was merely not allowed under 8 C.F.R. § 245.2(a)(5)(ii) to *renew* that application in his exclusion hearing. This Court finds that 8 C.F.R. § 245.2(a)(5)(ii) is not arbitrary, capricious, or manifestly contrary to the language or intent of INA § 245.

### 2. CONSTITUTIONAL CLAIMS

Petitioner claims that by allowing aliens paroled into the United States under an advance parole to renew applications for adjustment in exclusion hearings, but not aliens who entered under other types of parole, 8 C.F.R. § 245.2(a)(5)(ii) denies petitioner the equal protection of the laws. Petitioner also claims that since the regulation is invalid, his due process rights were denied when it was applied to him. (Pet'r Mem.Supp.Pet. at 17–18).

#### (a) *Equal Protection*

■■■■ An alien seeking admission to the United States "has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32, 103 S.Ct. 321, 329, 74 L.Ed.2d 21 (1982). Petitioner was paroled into the United States and his parole has been revoked. He is considered to be an alien seeking admission to the United States. *Alvarez–Mendez*, 941 F.2d at 963. As such, petitioner has no equal protection rights, and his claim for relief on that ground is denied.

#### (b) *Due Process*

■■■■ An alien seeking admission is entitled to due process of law. *Landon*, 459 U.S. at 32, 103 S.Ct. at 329. Petitioner argues that since 8 C.F.R. § 245.2(a)(5)(ii) is invalid, application of the regulation to petitioner was a violation of due process. Since this Court has determined that 8 C.F.R. § 245.2(a)(5)(ii) is not arbitrary, capricious, or manifestly contrary to the INA, petitioner's argument fails.

**11.** By contrast, 8 U.S.C. § 1254(e) allows aliens to voluntarily depart the United States in lieu of deportation, at the discretion of the Attorney

### E. *BIA REFUSAL TO ALLOW PETITIONER TO WITHDRAW HIS APPLICATION*

Petitioner argues that the BIA abused its discretion when it refused to allow petitioner to voluntarily withdraw his application for admission and depart the country.

#### 1. WITHDRAWAL OF APPLICATION FOR ADMISSION IN THE EXCLUSION CONTEXT

■■■■ Petitioner sought to withdraw his application for admission and voluntarily depart the country. If an alien is deported pursuant to an order of exclusion, he must wait for one year before applying for readmission to the United States. 8 U.S.C. § 1182(a)(6)(A). If the alien is allowed to voluntarily depart he may immediately reapply for admission since he will not have been deported.

■■■■ No statute or regulation expressly entitles an alien to withdraw an application for admission in the exclusion context.[11] However, the BIA has held that "an immigration judge may permit an alien in exclusion proceedings to withdraw his application for admission." *Matter of Gutierrez*, 19 I & N Dec. 562, 564 (BIA 1988).

In *Matter of Gutierrez* the BIA set forth the standard governing such withdrawals. The Board first held that a balancing of equities was *not* a proper method for determining whether withdrawal should be permitted.

> An immigration judge should not allow withdrawal unless an alien, in addition to demonstrating that he possesses both the intent and the means to depart immediately from the United States, establishes that factors *directly relating to the issue of his admissibility* indicate that granting withdrawal would be in the interest of justice.

*Id.* at 564–65 (emphasis added). The Board also held that "once the exclusion hearing has been conducted and the issues of excludability have been resolved, such permission

General and provided that the alien satisfies the eligibility criteria set forth in that provision. *See Rashtabadi v. INS*, 23 F.3d 1562 (9th Cir.1994).

should *ordinarily only be granted with the concurrence of the Service* [INS]." *Id.* at 565 (emphasis added).

In petitioner's appeal, the Board reaffirmed that *Gutierrez* was the proper standard, and upheld the IJ's denial of petitioner's request.

## 2. STANDARD OF REVIEW

■■■■■ Since withdrawal of an application for admission is a discretionary remedy, the BIA's review of an order denying voluntary withdrawal is reviewed for abuse of discretion. *See Rashtabadi v. INS,* 23 F.3d 1562 (9th Cir.1994) (once statutory eligibility is established, denial of adjustment of status is reviewed for abuse of discretion); *Abedini v. INS,* 971 F.2d 188, 191 (9th Cir.1992) ("Discretionary denials of asylum and of voluntary departure are reviewed for abuse of discretion."). Under the abuse of discretion standard, the agency involved must indicate "how it weighed the factors involved and how it arrived at its conclusion. Without such an explanation, a reviewing court cannot tell whether the IJ or BIA has departed from established policies ... and thereby abused its discretion." *Yepes–Prado v. INS,* 10 F.3d 1363, 1370 (9th Cir.1993).

## 3. APPLICATION

■■■■ Petitioner argues that the BIA erred in not finding that allowing petitioner to withdraw his application was in the interest of justice. Specifically, petitioner argues that his U.S. citizen wife and his permanent resident children will suffer, that petitioner will probably lose his business, and that petitioner's United States citizen employees will lose their jobs if petitioner is deported. If withdrawal is allowed, petitioner argues, he will be able to immediately apply for immigration to the United States as the spouse of

a U.S. citizen, and thus avoid all of the above hardships.

■■■■ Both the IJ and the BIA discussed the petitioner's citizen wife, lawful resident children, and business in their decisions.[12] However, in *Matter of Gutierrez,* the BIA held that the factors relevant to whether withdrawal is in the interest of justice must relate to the issue of *admissibility. Gutierrez,* 19 I. & N. Dec. at 565. A general balancing of equities is not part of the standard which the IJ is required to apply in exercising his discretion. *Id.* at 564. In rejecting petitioner's request, the immigration judge noted the "particularly egregious ... purchase and apparent use of a false Alien Registration Card which he [petitioner] purchased for a substantial sum." (AR–III at 41.) The BIA held that petitioner "has not introduced a single fact regarding the circumstances of the fraud he committed during his attempted entry." (AR–III at 5.) Furthermore, there was no factual dispute at petitioner's hearing. The BIA emphasized the fact that petitioner admitted his fraud, and that the INS opposed the granting of this request for withdrawal. Under *Gutierrez,* once the issue of excludability has been resolved, permission to withdraw "should ordinarily only be granted with the concurrence of the Service." *Gutierrez,* 19 I. & N. Dec. at 565. "It was never contemplated that the withdrawal of an application for admission would become a nonstatutory form of 'relief' from excludability which an applicant could apply for after excludability became apparent." *Id.*

This Court finds that the BIA adequately described the factors which it considered in upholding the IJ's decision to deny discretionary relief. The BIA's analysis is consistent with the standard it established in *Gutierrez.* In fact, in *Gutierrez* the BIA held

---

**12.** Petitioner argues that the "BIA in its decision misstated the facts of this case by finding that Mrs. Sharma lived in the United Kingdom." (Pet'r Mem.Supp.Pet. at 20.) The following language appears in the BIA's written decision at page 4:

> Also, the applicant urges a balancing of equities surrounding the case. We do note that he has a business in the United States, a United States citizen spouse and two lawful perma-

nent resident children, all living in the *United Kingdom.*

(AR–III at 4 (emphasis added).) Even if the BIA was actually mistaken about Mrs. Sharma's residence that mistake is immaterial since the BIA held that these factors are irrelevant under the *Gutierrez* standard, and that a balancing of equities is not an appropriate method to determine whether an alien merits permission to withdraw his application for admission.

that it was *error* to grant relief on substantially similar facts: Gutierrez had a lawful permanent resident wife and one United States citizen child. His wife was pregnant with a second child. Gutierrez had been continuously employed in the United States and had no criminal record. Like petitioner, Gutierrez was being excluded for using a counterfeit Alien Registration Card for which he paid $40 (petitioner paid over $13,000 for his). The BIA found that the IJ erred in *granting* permission to withdraw since there were no "facts or circumstances *relevant to the issue of his admissibility* which suggest that justice demands he be allowed to withdraw his application for admission." *Gutierrez,* 19 I. & N. Dec. at 565. This Court thus finds that the BIA did not abuse its discretion in rejecting petitioner's request for permission to withdraw his application for admission.

### CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED THAT the Petition for Writ of Habeas Corpus is DENIED.

IT IS SO ORDERED.

### JUDGMENT

In accordance with this Court's Order Denying Petition for Writ of Habeas Corpus,

IT IS HEREBY ORDERED THAT final judgment is entered in favor of respondents.

IT IS SO ORDERED.